---

HONEYWELL INTERNATIONAL, INC.,                    Case No. 11-CV-2779 (PJS/JJK)

                Plaintiff,

v.                                                                            ORDER

VENSTAR, INC.,

                Defendant.

---

Kenneth A. Liebman and Andrew F. Johnson, FAEGRE BAKER DANIELS LLP, for plaintiff.

Anthony H. Handal and David M. Dushane, HANDAL & MOROFSKY LLC; Christopher M. Daniels and Jesse H. Kibort, DANIELS & WYMORE, PLLC, for defendant.

Plaintiff Honeywell International, Inc. ("Honeywell") brings this patent-infringement action against defendant Venstar, Inc. ("Venstar"). This matter is before the Court on Venstar's motion to dismiss for lack of personal jurisdiction. For the reasons stated below, the motion is denied.

## I. BACKGROUND

Honeywell is a large corporation that, among other things, develops and sells programmable thermostats for home use. Am. Compl. ¶ 7. Honeywell is the owner of nine patents relating to these thermostats and brings nine claims of infringement against Venstar based on Venstar's manufacture, importation, and sale of programmable thermostats, including Venstar's ColorTouch thermostat. Am. Compl. ¶¶ 8-18.

Venstar is a California company with its principal place of business in Chatsworth, California. Dushane Decl., Mar. 2, 2012 [ECF No. 14] [hereinafter "Dushane Decl."] ¶ 3.

Venstar is not registered to do business in Minnesota, nor does it maintain an office in Minnesota. Dushane Decl. ¶¶ 29-30. Venstar has never shipped a ColorTouch thermostat directly to Minnesota, and there is no evidence that any Venstar employee has traveled to Minnesota within the last five years. Dushane Decl. ¶¶ 28, 31.

Venstar does not sell its products to retailers or end users; instead, all sales are to independent distributors (to be sold under the Venstar brand) or to national OEM customers (to be sold under each manufacturer's own brand). Dushane Decl. ¶¶ 13, 26. One of Venstar's distributors, Excelsior LLC ("Excelsior"), has a product territory that includes several Minnesota counties. Johnson Decl., June 26, 2012 [ECF No. 42] [hereinafter "Johnson Decl."] Ex. 5. The distribution agreement between Venstar and Excelsior specifies that Excelsior's product territory includes these counties (although the agreement also states that the territories specified in the agreement may be shared between Excelsior and several other Venstar distributors). Johnson Decl. Ex. 5 ¶ 1. Under the agreement, Excelsior may distribute Venstar-branded products for resale only in the counties listed in the agreement. Johnson Decl. Ex. 5 ¶ 1. The agreement also specifies that Excelsior "shall use its best efforts to promote Venstar brand products by advertising, creating and displaying point of purchase materials and providing training to their employees and customers relating to the sale and use of Venstar brand products." Johnson Decl. Ex. 5 ¶ 4. The agreement is governed by California law. Johnson Decl. Ex. 5 ¶ 7.

Excelsior is "one of [Venstar's] biggest distributors," Johnson Decl. Ex. 9 at 2, and Venstar provides marketing and promotional materials to Excelsior. *See* Johnson Decl. Ex. 9 (email discussion about providing Venstar graphics and images to Excelsior to help Excelsior create a postcard on Venstar's behalf); Johnson Decl. Ex. 10 (email discussion of counter

display).  At Excelsior's request, Venstar has fielded phone calls from Excelsior customers and provided advice to those customers about which model of the ColorTouch is suitable for their needs.  Johnson Decl. Ex. 11 (email discussion of phone calls).

Excelsior is located in Illinois, but it has two retail stores in Minnesota (as well as ten stores in other Midwestern states).  Dushane Decl. ¶ 20.  All of the products that Venstar sells to Excelsior are shipped to Illinois.  Dushane Decl. ¶ 21.  Of the 20,343 ColorTouch thermostats that Venstar has manufactured, Venstar has shipped 71 to Excelsior.  Dushane Decl. ¶ 22.  Excelsior has sold 25 of those ColorTouch thermostats at its Minnesota stores.  Johnson Decl. Exs. 7-8.  In addition to Venstar's ColorTouch thermostat, Excelsior also sells Honeywell thermostats.   Johnson Decl. Ex. 20.

Venstar has a website that allows visitors to click on a map of the United States to locate Venstar distributors.  Clicking on Minnesota brings up a screen that identifies the two Excelsior stores.  Johnson Decl. Ex. 14.  Venstar's website also provides access to software called the "ColorTouch Assistant."  Purchasers of the ColorTouch thermostat can download the software from Venstar's website.  Johnson Decl. Ex. 13 at 1.  When a purchaser runs the software, the customer's thermostat automatically connects to Venstar's website, which updates the thermostat's software and operating system.  Johnson Decl. Ex. 13 at 2.  Between June 1, 2010 and May 1, 2012, the ColorTouch Assistant page of Venstar's website was visited 48 times from locations within Minnesota for an average of more than five minutes per visit.  Johnson Decl. Ex. 15 at 2.

II.  ANALYSIS

Because this is a patent-infringement action, the Court looks to Federal Circuit law to

determine whether it has personal jurisdiction over Venstar.  *Nuance Commc'ns, Inc. v. Abbyy*

*Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010).  For the exercise of personal jurisdiction

to be proper, it must comport both with the forum state's long-arm statute[1] and with the Due

Process Clause of the Fifth Amendment.[2]  *Graphic Controls Corp. v. Utah Med. Prods., Inc.*,

149 F.3d 1382, 1385 (Fed. Cir. 1998).  Minnesota's long-arm statute authorizes the exercise of

jurisdiction to the maximum extent permitted by the Due Process Clause.  *Red Wing Shoe Co. v.*

*Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1358 (Fed. Cir. 1998).  The only question, then, is

whether the exercise of personal jurisdiction over Venstar is constitutional.

There are two types of personal jurisdiction: general and specific.  Honeywell does not

contend that this Court has general jurisdiction over Venstar; instead, it relies on the concept of

specific jurisdiction.  "The Federal Circuit applies a three prong test to determine if specific

jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the

---

[1]The requirement that the exercise of personal jurisdiction must be consistent with the forum state's long-arm statute is imposed by Rule 4(k) of the Federal Rules of Civil Procedure.

[2]This is a federal-question case, and thus the Due Process Clause of the Fifth Amendment — rather than the Due Process Clause of the Fourteenth Amendment — constrains the Court's exercise of personal jurisdiction over Venstar.  *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389 n.2 (8th Cir. 1991).  It is possible that, under the Fifth Amendment, a defendant need merely have minimum contacts with the United States as a whole, rather than with a particular state, in order for a federal court to exercise personal jurisdiction over that defendant.  *Cf.* Fed. R. Civ. P. 4(k)(2) (allowing a federal court to exercise personal jurisdiction over a defendant in a federal-question case, even when that defendant "is not subject to jurisdiction in any state's courts of general jurisdiction," as long as "exercising jurisdiction is consistent with the United States Constitution and laws").  For purposes of ruling on Venstar's motion, however, the Court will assume that Venstar must have minimum contacts with Minnesota.

forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *Nuance Commc'ns, Inc.*, 626 F.3d at 1231. If the first two factors are met, the burden shifts to the defendant to show that the exercise of personal jurisdiction is nevertheless unreasonable and unfair. *Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1346 (Fed. Cir. 2012). This final factor "is to be applied sparingly." *Campbell Pet Co. v. Miale*, 542 F.3d 879, 885 (Fed. Cir. 2008).

Honeywell argues that personal jurisdiction over Venstar is proper under *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558 (Fed. Cir. 1994). Venstar apparently does not disagree that, under *Beverly Hills Fan*, this Court would have jurisdiction. Instead, Venstar contends that *Beverly Hills Fan* was abrogated by the Supreme Court in *J. McIntyre Machinery, Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) and that, under *J. McIntyre*, the Court lacks personal jurisdiction over it.

After the hearing on Venstar's motion, the Federal Circuit issued a decision holding that *J. McIntyre* did *not* abrogate *Beverly Hills Fan* or change the law of personal jurisdiction. *See AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1363-64 (Fed. Cir. 2012). For that reason alone, then, Venstar's motion would appear to be doomed. But even under Venstar's reading of *J. McIntyre*, the Court has personal jurisdiction over Venstar.

*J. McIntyre* was a product-liability case brought by a New Jersey resident against J. McIntyre, a British manufacturer. 131 S. Ct. at 2786 (plurality opinion). J. McIntyre sold its products in the United States through a distributor. *Id.* The distributor "'structured [its] advertising and sales efforts in accordance with' J. McIntyre's 'direction and guidance whenever possible," and some of the machines were sold on consignment to the distributor. *Id.* (quoting

*Nicastro v. McIntyre Mach. Am., Ltd.*, 987 A.2d 575, 579 (N.J. 2010)).  At most, only four

J. McIntyre machines wound up in New Jersey, and the record suggested that the injury-causing

machine may have been the only one in New Jersey.  *Id.*  The New Jersey Supreme Court

nevertheless found that personal jurisdiction existed in New Jersey "because the injury occurred

in New Jersey; because [J. McIntyre] knew or reasonably should have known 'that its products

are distributed through a nationwide distribution system that might lead to those products being

sold in any of the fifty states'; and because [J. McIntyre] failed to 'take some reasonable step to

prevent the distribution of its products in this State.'"  *Id.* (quoting *Nicastro*, 987 A.2d at 592).

The Supreme Court reversed, but without a majority opinion.  Justice Kennedy, writing

for the plurality, opined that "[t]he defendant's transmission of goods permits the exercise of

jurisdiction only where the defendant can be said to have targeted the forum; as a general rule, it

is not enough that the defendant might have predicted that its goods will reach the forum

State. . . . This Court's precedents make clear that it is the defendant's actions, not his

expectations, that empower a State's courts to subject him to judgment."  *Id.* at 2788-89.

Because there was no evidence that J. McIntyre had targeted the New Jersey market, the plurality

found that the exercise of personal jurisdiction by New Jersey courts was improper.  *Id.* at 2790-

91.

Venstar contends that, under Justice Kennedy's plurality opinion, this Court lacks

jurisdiction over it.  As noted, the Federal Circuit recently held that *J. McIntyre* did not change

the standards under which personal jurisdiction is to be assessed in patent cases, and specifically

noted that Justice Breyer's concurrence constituted the controlling opinion.  *See AFTG-TG, LLC*,

689 F.3d at 1363. But even if Venstar were correct that Justice Kennedy's plurality opinion is controlling, this Court would nevertheless be able to exercise personal jurisdiction over Venstar.

In *J. McIntyre*, there was no written distribution agreement. J.A. at 85a, *J. McIntyre Mach. Ltd. v. Nicastro*, 131 S. Ct. 2780 (2011) (No. 09-1343), 2010 WL 4642529, at *85a. Here, by contrast, there is a written distribution agreement, and that distribution agreement does several significant things: It explicitly defines Excelsior's "Product Territory" to include a portion of Minnesota; it prohibits Excelsior from selling outside of its product territory; and it requires Excelsior to use its "best efforts" to promote Venstar-brand products within its product territory. In short, then, Venstar voluntarily entered into a contract that legally obligated Excelsior to use its best efforts to sell Venstar products *in Minnesota* (as well as in the rest of its product territory). *See Imperial Asset Mgmt., LLC v. Matthews Land, Inc.*, No. D054440, 2009 WL 3824856, at *5 (Cal. Ct. App. Nov. 17, 2009) ("Such best efforts obligations have been readily recognized as creating enforceable contractual rights, particularly in the context of land development disputes."); *L.A. Foods, LLC v. Indel Food Prods., Inc.*, No. B167655, 2004 WL 2757935, at *4 (Cal. Ct. App. Dec. 3, 2004) (rejecting defendant's argument that a "best efforts" clause was too vague to be enforceable).[3] And there is no doubt that Venstar sold its allegedly infringing products in Minnesota through this distribution channel. This is sufficient to establish both that Venstar "targeted" the Minnesota market and that this case arises out of that "targeting."

It is true, as Venstar argues, that *J. McIntyre* found jurisdiction to be lacking despite the fact that the U.S. distributor followed J. McIntyre's general direction and guidance with respect

_____

[3]As noted earlier, the distribution agreement is governed by California law.

to its advertising and sales efforts. But following a manufacturer's general guidance about the promotion of a product is not the same thing as having a legally enforceable obligation to promote that product in a particular state. Moreover, the crucial point of *J. McIntyre* was the lack of evidence that J. McIntyre had specifically targeted New Jersey. Here, Venstar specifically targeted Minnesota by defining certain counties in Minnesota as part of Excelsior's territory and by legally obligating Excelsior to use its best efforts to promote Venstar's products in those counties. Thus, even if Justice Kennedy's opinion in *J. McIntyre* were controlling, the Court would have little trouble concluding that it can exercise personal jurisdiction over Venstar.

Venstar also argues that, even if it purposefully directed activities at Minnesota, and even if this case arises out of those activities, the assertion of jurisdiction is neither reasonable nor fair. The Court disagrees. A defendant seeking to defeat jurisdiction on this ground "must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Venstar has not met this burden. Honeywell has a substantial presence in Minnesota, which gives Minnesota a strong interest in providing a forum for Honeywell to resolve this dispute. And although Venstar attempts to paint itself as a small mom-and-pop operation, Venstar sells its products nationwide and has employees in California, New York, Oregon, Colorado, and China. Dushane Decl. ¶¶ 5-6, 17. Venstar can afford to defend itself in a Minnesota court. The Court therefore denies Venstar's motion to dismiss for lack of personal jurisdiction.

Venstar moves, in the alternative, to transfer venue to the Central District of California pursuant to 28 U.S.C. § 1404(a). The Court has considered the § 1404(a) factors and finds that they do not warrant transfer, particularly in light of the fact that Honeywell is suing in what is

essentially its home district. *See Terra Int'l, Inc. v. Miss. Chem. Corp.*, 119 F.3d 688, 695 (8th Cir. 1997) ("In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted."); *see also Storage Technology Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003) (in reviewing a motion to transfer under § 1404(a), the Federal Circuit applies the law of the appropriate regional circuit). Although Honeywell is incorporated in Delaware and has a principal place of business in New Jersey, Am. Compl. ¶ 1, Honeywell employs over 3,500 people in Minnesota and the division responsible for the inventions that are the subject of this lawsuit is located in Minnesota, *see* Tyhacz Decl., June 25, 2012 [ECF No. 43] ¶ 2. The Court therefore also denies Venstar's motion to transfer venue.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1.   Defendant's motion to dismiss for lack of jurisdiction [ECF No. 11] is DENIED; and

2.   Defendant's motion to transfer venue [ECF No. 17] is DENIED.

Dated: October  25, 2012                         s/Patrick J. Schiltz
                                                 Patrick J. Schiltz
                                                 United States District Judge